In the Matter of THOMAS F. VIRCIGLIO, an Attorney, Respondent. BRONX COUNTY BAR ASSOCIATION, Petitioner.

First Department, July 13, 1961.

*Morris Lyman* and *Donald Diamond* for petitioner.

*Thomas F. Virciglio,* respondent in person.

*Per Curiam.* Respondent was admitted to practice in this department in 1934. Three charges were formulated against him by the Grievance Committee of the Bronx County Bar Association. As to one charge, no evidence was submitted, due to the fact that the complaining witness had left the jurisdiction and refused to return. Of the other charges, one arose from a complaint made by a creditor of one of respondent's clients that a check, representing a portion of the amount owed to the payee by the client and signed by respondent, was returned for insufficient funds. The other complaint was that an arrangement made in writing by respondent with a dissatisfied client to return a portion of the fee paid by the client was not performed by respondent.

While these charges, if substantiated, would indicate that respondent did not live up to his obligations as an attorney and might call for disciplinary action, they are not, in and of themselves, of very serious proportions. However, the explanations given by respondent are, in their indications, of more serious import than the charges themselves. Respondent explains the default on the check in this manner: He had a corporate client named Aral Company. One Valerio was superintendent of construction for that company. There is some doubt on the record as to whether Valerio was an officer, but the transaction that took place was authorized by an officer of the company. Valerio desired to buy a car and asked respondent to indorse a note to be given to a bank in order to obtain the money for a down payment on the car. Respondent pointed out that he would not be acceptable to the bank as he was not a depositor. Valerio then offered the respondent $2,000, which were funds of the Aral Company, which respondent was to deposit in the bank

together with some $800 of his own. At the same time, he gave Valerio two checks drawn on the account, one for $500 and one for $1,500, with the names of the payees in blank. These checks were to be presented after the bank had approved the indorsement and made the loan on Valerio's note. This was done. Valerio filled in the name of the Aral Company on the $500 check and the name of a creditor of the Aral Company on the $1,500 check. The $500 check was presented promptly and paid. Due to an accident, the creditor did not present the other check for some months, and when it was presented there was only about $200 in respondent's account.

Taking respondent's explanation at its face value, it shows that he was quite willing to enter into a scheme to induce the bank to lend money on the credit of his indorsement when he knew that actually that credit was without substance. His further explanation is, if anything, more reprehensible. He states that the Aral Company owed him money for legal services and that it was his intention to stop payment on the $1,500 check but that he had neglected to do so and, in the interval before the check was presented, he had forgotten about the matter and believed that the money in the account was his. Later on, he did make a payment to the creditor from his own funds of $500 on account of the check.

Respondent's explanation of his agreement to return the fee in connection with the other charge is that he was coerced into making the agreement whereas, in fact, he had performed services whose value was in excess of the amount that had been paid him. However, he defaulted in an action brought to recover the amount he agreed to pay and presently expresses willingness to pay the judgment when he is able.

Lastly, he did not respond to the communications sent him by the Grievance Committee. His explanations in this regard, with the exception to be noted, were facile and changing as proofs were presented which cast doubt upon earlier explanations. He claimed that he actually appeared before the committee and was questioned at length. The records of the committee contain no notation of his appearance, and the stenographer who took down the testimony for the committee during the period in question testified that respondent had never testified before the committee as he claimed.

The conclusion reached is that respondent is utterly lacking in the ethical standards that are a prerequisite to practice of the law. Though what he has done has not had serious effect either upon his clients or others with whom his practice has brought

him into contact, it would appear that it would only be a question of time before there would be serious consequences. His lack of conception of the duties and responsibilities of an attorney indicates that the protection of the public — and even his own good — demand that his license to practice be revoked. (See *Matter of Wohlfeld*, 12 A D 2d 82, motion for leave to appeal denied 9 N Y 2d 612; *Matter of O'Doherty*, 14 A D 2d 4, decided simultaneously herewith.)

.... The respondent should be disbarred.

BOTEIN, P. J., BREITEL, RABIN, VALENTE and STEUER, JJ., concur.

Respondent disbarred.