In the Matter of E. R. MILLER, Jr.,
Attorney at Law.

No. 6069

February 25, 1971 482 P.2d 326

---

66

*Sidney Robinson,* of Reno, for Petitioner.

*Thomas A. Cooke,* President; *Robert R. Herz,* Executive Secretary, State Bar of Nevada; *Thomas R. C. Wilson, II,* Special Prosecutor, of Reno, for Respondent.

## OPINION

*Per Curiam:*

On May 15, 1969, a hearing was held before a quorum of the local administrative committee of district No. 2 of the State Bar of Nevada, to determine whether or not E. R. Miller, Jr., an attorney at law, the petitioner herein, had violated certain rules of this court and the laws of the state. Both the petitioner and the State Bar of Nevada were represented by counsel.

Evidence introduced at the hearing revealed that the petitioner, in his capacity as an attorney at law, was employed by

Joe S. Hobson to submit a written bid to Michael Kapetan, administrator of the Estate of Emanole Kapetan, deceased, in the amount of $12,000 for the Silver Dollar Club, a bar located in Ely, Nevada.

The attorney for the administrator contacted Miller prior to the confirmation of the sale of the Silver Dollar and advised him that the administrator was opposed to the sale of the premises because he personally asserted an interest in some of the equipment located at the bar, and because the offer of $12,000 was insufficient. On the morning of March 14, 1967, Miller met the administrator and his attorney on the courthouse stairs and while ascending the stairs offered the administrator $2,000 "under the table" if he would agree to the sale of the bar to Hobson. This offer was again made to the administrator in the presence of George Pavalakis, in the law library or jury room, before they entered the courtroom. At the confirmation hearing, held that same day, Miller raised Hobson's bid to $13,000, but he never revealed the $2,000 "under the table" offer to the district court or to the attorney who had previously been appointed to represent the incompetent widow of Emanole Kapetan. The record indicates that the administrator, in open court, did object to the $12,000 offer but gave approval of the $13,000 offer as did the attorney for the incompetent widow.

On the afternoon of March 14, 1967, Jimmy Pavalakis contacted Kapetan and his attorney, as well as Miller, and made a verbal offer to purchase the Silver Dollar Club for $16,000.

During that same afternoon there were several contacts made between the administrator and his attorney and Miller. The administrator was pressing to set aside the sale to Hobson. There was also a discussion of the offer by Jimmy Pavalakis to purchase the Silver Dollar Club from either the Kapetan estate or from Hobson for $16,000.

The attorney for the administrator prepared a motion to set aside the sale and Miller obtained the signature of the district court judge upon a contempt citation against the administrator for his failure to execute the deed to the Silver Dollar to Hobson. This citation was not served on the administrator but he had knowledge of it.

Later that afternoon the petitioner paid to Mike Kapetan the $2,000 in $20 bills and cautioned him "If anybody should say anything, just tell them it is paid for your good will." Kapetan then executed the administrator's deed conveying the Silver Dollar to Joe Hobson.

On July 25, 1968, the attorney for the incompetent widow moved to set aside the sale of the Silver Dollar upon the basis

of fraud. On August 18, 1968, after a hearing, the district judge set aside the sale to Hobson and referred the question of Miller's conduct to the local administrative committee for district No. 2 of the State Bar of Nevada.

Based on the evidence which it received, the administrative committee found that Miller had breached the code of professional ethics and Supreme Court Rules 198 and 204, and that he was guilty of bribing a judicial officer, a felony, and recommended to the board of governors of the State Bar of Nevada that: (1) Miller be suspended for not less than three years; (2) be assessed costs of proceedings; and (3) be given a public reprimand.

The board of governors sustained the committee's findings of fact except the finding that Miller was guilty of bribing a judicial officer. As to that charge, the board found that there was insufficient evidence to support it against the petitioner. Nonetheless, the board adopted the committee's recommendation for disciplinary measures against Miller.

Miller contends that the entertainment by the district court of the motion to vacate and rescind the sale constituted error prejudicial to him; that all proceedings pursuant to that motion were void; that the transcript of proceedings held in connection with that motion was presented to the local administrative committee No. 2 and constituted evidence which could not have been, and should not have been, properly considered by the committee; that the findings of the district court that the sum of $2,000 was paid by him "under the table" was prejudicial and detrimental and contrary to the facts; and that no valid order could have been entered upon the motion to vacate and rescind the sale by the court; and that the only purpose for holding the hearing was to lay the foundation for charges of unprofessional conduct against him. Furthermore, he contends that because the board of governors absolved him from the charge of bribing a judicial officer, that a suspension from the practice of law for a period of three (3) years is unjustified and excessively harsh.

It is the obligation of this court, in reviewing a case of this nature, to examine the entire record anew to determine whether any charge meriting discipline has been proven. In such a review we are not bound by the findings or recommendations of the local administrative committee, nor by the findings or recommendations by the board of governors. In re Scott, 53 Nev. 24, 292 P. 291 (1930); In re Wright, 68 Nev. 324, 232 P.2d 398 (1951). On the other hand the findings and the recommendations of the committee and the board are persuasive,

and a petitioner must affirmatively reveal wherein the findings and recommendations of the committee and board are erroneous and unlawful. In re Wright, supra.

The board of governors specifically found that there was insufficient evidence to establish that Miller was guilty of a violation of NRS 199.010, which makes the bribing of a judicial officer a felony. We reach the same result but for a different reason. An administrator of an estate is merely an officer of the court appointed to carry into effect the decisions and decrees made by the district court and is not a judicial officer. Cf. Burnside v. Bristol County Board of Retirement, 226 N.E.2d 234 (Mass. 1967).

A judicial officer has powers confided in him to be exercised according to his discretion and does not act in his official capacity at his peril. Davis v. Burris, 75 P.2d 689 (Ariz. 1938). He is an individual who determines whether a law has been violated, adjudges persons guilty and has the power to inflict penalties for violation of laws. Furthermore he has the power to determine causes between parties. Cleveland C. C. & St. L. R. Co. v. People, 72 N.E. 725 (Ill. 1904); Hitt v. State, 181 So. 331 (Miss. 1938). An administrator of an estate possesses none of the characteristics or powers of a judicial officer. Kapetan, not being a judicial officer, could not be bribed in that capacity by Miller. Therefore, Miller could not be guilty of a violation of NRS 199.010.

Here our primary concern is whether the petitioner violated the rules of this court, and if so whether the recommendations for disciplinary action should be imposed against him.

We are not concerned with whether the motion to set aside the sale of the Silver Dollar was timely, or whether the proceedings had in relation to that motion were void. The petitioner's entire "smoke screen" attack upon the propriety of the probate proceedings in district court is in no way relevant to these disciplinary proceedings. We are only concerned with Miller's conduct on March 14, 1967, and any subsequent acts by him relevant to that conduct.

We find that Miller surreptitiously offered Kapetan $2,000 outside the probate proceedings in payment for his consent to the sale of the Silver Dollar, and in order to obtain Kapetan's signature to the deed of the premises he paid Kapetan the

$2,000 in denominations of $20, and cautioned him "if anybody should say anything, just tell them it is for your good will."

It is to be noted that at the time he received the $2,000, Kapetan was represented by counsel, and Miller never gave him any advice about the future disposition of the money. Kapetan was free to seek his attorney's advice in regards to its ultimate disposition. However, the entire atmosphere created by Miller's offer to pay "under the table" and his warnings to Kapetan not to reveal the true purpose of the $2,000, could only have led Kapetan or any one else in his position to understand and believe that he should secretly keep the money for himself, and should not reveal its existence to the district court or the attorney representing the incompetent widow, nor pay it into the probate estate.

In this matter we are required to view Miller in the light of his position as an attorney at law. He either knew, or in his capacity should have known, that any additional money paid for the Silver Dollar was to be paid through the court into the Kapetan estate. He knew, or should have known, to do otherwise was a fraud upon the court. The surreptitious manner in which the transaction was conducted indicates Miller's knowledge of wrongdoing and his intent to defraud the estate.

Practicing deception upon a court by fraudulent devices is gross misconduct in the perversion or obstruction of justice and warrants stern disciplinary action. In re Wright, 69 Nev. 259, 248 P.2d 1080 (1952). By his fraudulent handling of the $2,000, Miller practiced a deception upon the district court, even though the court was not aware of that deception for more than a year. That conduct was indeed a perversion and obstruction of justice and a breach of professional ethics that warrants severe disciplinary action against the petitioner.

Furthermore, Miller is specifically found to have violated Supreme Court Rules 198 and 204. Supreme Court Rule 198[1] requires that the conduct of a lawyer before a court and with

---

[1]Supreme Court Rule 198:

"1. The conduct of the lawyer before the court and with other lawyers should at all times be characterized by honesty, candor and fairness.

"2. A lawyer should never knowingly misquote the contents of a paper, the testimony of a witness, the language or the argument of opposing counsel, or the language of a decision or a textbook. He should not cite authorities he knows have been vacated, overruled or distinguished, or cite a statute that has been repealed, without making a full disclosure to the court and counsel. He should not in argument assert as a fact that which has not been proved, or, in those jurisdictions in

other lawyers should at all times be characterized by honesty, candor and fairness.

Not on March 14, 1967, nor any time thereafter did Miller display honesty, candor or fairness toward the judge of the district court. On the very day that this entire transaction took place Miller went to the judge and obtained his signature on a contempt citation against Kapetan when the administrator was "dragging his feet" in the execution of the deed, but never once did he mention the $2,000 deal. Certainly he displayed no candor or fairness toward the attorney who was appointed to represent Kapetan's incompetent widow.

Supreme Court Rule 204,[2] among other prohibitions, precludes a lawyer from rendering any service for a client which

---

which a side has the opening and closing arguments, mislead his opponent by concealing or withholding positions in his opening argument upon which his side intends to rely.

"3. A lawyer should be extraordinarily careful to be fair, accurate and comprehensive in all ex parte presentations and in drawing or otherwise procuring affidavits.

"4. A lawyer should never attempt to place before the court, jury or public evidence which he knows is clearly inadmissible, nor should he make any remarks or statements which are intended improperly to influence the outcome of any case.

"5. A lawyer should not propose a stipulation in the jury's presence unless he knows or has any reason to believe the opposing lawyer will accept it.

"6. A lawyer should never employ dilatory tactics of any kind to procure more fees.

"7. A lawyer should never file a pleading or any other document which he knows to be false in whole or in part or which is intended only for delay."

[2]Supreme Court Rule 204:

"No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is entitled to receive, nor should any lawyer render, any service or advice involving disloyalty to the law whose ministers lawyers are, or disrespect of the judicial office, which lawyers are bound to uphold, or corruption of any person or persons exercising a public office or private trust, or deception or betrayal of the public. When rendering any such improper service or advice the lawyer invites and merits stern and just condemnation. Correspondingly, he advances the honor of his profession and the best interests of his client when he renders service or gives advice tending to impress upon the client and his undertaking exact compliance with the strictest principles of moral law. He must also observe and advise his client to observe the statute law, though until a statute has been construed and interpreted by competent adjudication, he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent. But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen."

would corrupt any person or persons exercising a public or private trust, and provides that any lawyer rendering such improper service invites and merits stern and just condemnation. Miller was in direct violation of this rule. Purportedly, on behalf of his client, Hobson,[3] he did in fact corrupt Michael Kapetan who was at that time exercising a private trust.

Aware that a higher degree of proof is required in a matter of this nature to determine questions of fact than is required to determine questions of fact in an ordinary civil action or proceedings, we find that the evidence presented here more than meets that test. In re Wright, supra; Copren v. State Bar, 64 Nev. 364, 183 P.2d 833 (1947). The findings and conclusions of the board of governors, with the exception above noted, are therefore affirmed.

We must now look to the board's recommendations. It is noted that while it struck, for lack of evidence, the administrative committee's finding that Miller had committed a felony, it nevertheless accepted in its entirety and without explanation, the committee's disciplinary recommendation.

We find nothing of mitigation in the record. Even though the most serious charge against the petitioner was set aside and we have approved of that action by the board of governors, we nevertheless believe that the recommendation of three (3) years' suspension is appropriate.

The petitioner has previously been suspended from the practice of law. This court in In re Wright, supra, in ordering the disbarment of Wright, took notice of the fact that it was not his first offense and that he had previously been suspended from the practice of law. The previous poor record and repeated misconduct of an attorney may be considered in determining the severity of the penalty to be assessed in a disciplinary proceeding. Clark v. State Bar, 246 P.2d 1 (Cal. 1952); Townsend v. State Bar of California, 197 P.2d 326 (Cal. 1948); The Florida Bar v. Swidler, 173 So.2d 705 (Fla. 1965); In re McCallum, 64 N.E.2d 310 (Ill. 1945); In re Johnson, 228 A.2d 343 (N.J. 1967); In re Schner, 173 N.Y.S.2d 649 (1958). See also In re Virciglio, 218 N.Y.S.2d 1 (1961).

It is ordered that the petitioner be: (1) suspended from the

---

[3]Hobson was unaware of Miller's conduct on March 14, 1967. Miller was really acting on behalf of a Mrs. Pilkington who furnished the $2,000 and owned a bar adjacent to the Silver Dollar. The Pilkingtons were anxious to have the sale to Hobson consummated with the anticipation that Hobson would also purchase their property, or in the alternative that they would be able to purchase the Silver Dollar from Hobson.

practice of law for a period of three (3) years from and after the filing of this opinion (Supreme Court Rule No. 112); (2) that he be given a public reprimand, the same to be published in the Nevada State Bar Journal; and (3) that he be assessed the costs of the transcript of his hearing before the local administrative committee for district No. 2 in the sum of $394.50; for disbursements and expenses of the State Bar of Nevada in the sum of $426.19, together with the sum of $1,700 as counsel fees for Thomas R. C. Wilson, II, special prosecutor; the same to be paid forthwith into the treasury of the State Bar of Nevada, and to bear interest at the legal rate from the date of this opinion. The payment in full of the assessed costs, fees and interest shall be made prior to and as a condition of reinstatement should reinstatement be requested.