## In the Matter of CHARLES L. KELLAR, Attorney at Law.

### No. 6583

February 14, 1972          493 P.2d 1039

*Harry E. Claiborne,* of Las Vegas, for Petitioner.

*Richard W. Blakey,* First Vice President; *Robert R. Herz,* Executive Secretary, State Bar of Nevada; *George E. Holt,* Special Prosecutor, of Las Vegas, for Respondent.

*William M. Lyons* and *James L. Long,* of Sacramento, California, as Amici Curiae.

## OPINION

*Per Curiam:*

This matter is before us on an application filed pursuant to Supreme Court Rule 111 for review of a recommendation of the Board of Governors of the State Bar of Nevada that the applicant, Charles L. Kellar, be suspended from the practice of law for one year and assessed the costs of his hearing before the Local Administrative Committee, District No. 1, Clark County.

In September 1967, Kellar agreed to defend one Sara Sims in an eviction action in the Justice's Court of Las Vegas Township. Sims represented to Kellar that she and her family had occupied the premises for many years under a contract of sale and had acquired an equity in the property. Kellar moved to dismiss the eviction action on the ground that an interest in real property was involved and that, therefore, the justice's court was without jurisdiction. The action was continued.

Sims was unable to produce any documentation of her claim to an interest in the property, nor was there any record in the office of the County Recorder of Clark County of such an interest. We conclude that Sims never had an interest in the property other than as a tenant for a term of less than one year. In November, Kellar advised Sims that in his opinion the only way she could retain possession of the property was to purchase it.

There is a conflict in the testimony as to what transpired thereafter, and as to how much Sims knew about what transpired. It is clear that Kellar made arrangements with the owner of the property for its purchase by Sims, and opened an escrow in Sims's name; that Charmicor, Inc., which was owned by Kellar and his wife, was substituted as purchaser on January 22, 1968, and made a deposit of $500 as required

by the escrow instructions; and that Charmicor, Inc., completed the purchase on February 21, 1968, for $8,000, took an assignment of overdue rents from the former owner of the property, and evicted Sims in April 1968. It is also clear that Charmicor, Inc., offered to sell the property to Sims for $8,000, plus attorneys fees and costs, and continued such offer until Sims was evicted after her refusal either to purchase the property or to pay rent.

Kellar contended that he made the $500 down payment, through Charmicor, Inc., at the request of Sims, and on her behalf, because she was unable to raise the money, and that he caused the purchase to be completed on her behalf, as indicated by his willingness to cause Charmicor, Inc., to convey the property to her upon payment of the purchase price.

Sims contended that she had no contact with Kellar from some time in November until February when she was informed Charmicor, Inc., had purchased the property. There is some evidence in the record to contradict that contention.

Upon the complaint of Sara Sims, the local administrative committee found that Kellar had violated Supreme Court Rule 166, which provides: "A member of the state bar shall not acquire an interest adverse to a client." The committee recommended that he be suspended from the practice of law for three years and be required to pay the costs of the hearings. The Board of Governors concurred, except as to the length of the suspension.

Kellar contends that the proceedings against him were defective because the complaint did not specifically cite Supreme Court Rule 166. All that was required in the complaint was ". . . a concise statement in simple language of the misconduct of the accused which it is claimed constitutes ground for his disbarment, suspension or reproval." Supreme Court Rules 138 and 139. It was not necessary to include in the complaint anything more than the alleged facts upon which the complaint was based.

The findings and recommendations of the committee and the board are persuasive, but they are not binding upon this court. In re Miller, 87 Nev. 65, 482 P.2d 326 (1971).

At the time of the occurrences here involved, Canon 10 of the Canons of Professional Ethics of the American Bar Association, which were adopted by reference and made additional rules of professional conduct of the State Bar of Nevada by

Supreme Court Rule 203, provided: "The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting."

Supreme Court Rule 163 provides, among other things: "The willful breach of any of Rules 163 to 204, inclusive, shall be punished by reprimand, public or private, or by suspension from practice, or by disbarment." A member of the State Bar of Nevada who knowingly or consciously, as distinguished from negligently or inadvertently, engages in conduct which is prohibited by Supreme Court Rules 163 to 204, inclusive, is subject to the sanctions of Supreme Court Rule 163. It is not necessary that his conduct be accompanied by malice or an evil motive. Good faith may, however, be considered in mitigation of punishment.

From the time Kellar caused Charmicor, Inc., to deposit $500 toward purchase of the property, and changed the name in the escrow instructions from Sara Sims to Charmicor, Inc., he was in violation of Canon 10. His conduct in causing Charmicor, Inc., to complete the transaction served only to increase the magnitude of the offense. If, after committing the initial violation, he discovered for the first time that Sims could not arrange financing for purchase of the property, as he contends, he should have withdrawn from the transaction, even though forfeiture of the deposit would have resulted.

Kellar was also in violation of Supreme Court Rule 166. Even if his testimony is accepted, i.e., that he made the down payment and subsequently completed the purchase on behalf of Sims, and was always ready to convey the property to her upon her payment of the purchase price, he also took an assignment of the overdue rent from the owner of the property and attempted to collect it from Sims. Acquisition of that claim was certainly acquisition of an interest adverse to Sims. It was part of the claim he was engaged to defend against. It has been contended that because Sims had no interest in the property in the form of an estate in land, Kellar could not have acquired an interest adverse to her interest. That is too narrow an interpretation of the word "interest." Sims's desire was to retain possession of the property. Whether or not that desire was realistic is irrelevant. It was Kellar's function to assist her, if legal means were available, to accomplish that desire, or to inform her that he could not. Kellar's acquisition

of the property through Charmicor, Inc., eventually resulted in Sims's eviction by him. This was the result he was engaged to prevent, and was obviously an interest adverse to her interest.

There is considerable evidence in the record to indicate that Kellar was misled by his client and was acting in good faith, at least until he made the decision to cause Charmicor, Inc., to complete the purchase of the property after having made the initial deposit. These mitigating circumstances do not excuse Kellar's conduct, but they convince us that the penalties recommended by the local administrative committee and the Board of Governors are too severe.

It is therefore ordered that Charles L. Kellar is hereby publicly reprimanded for his conduct in violating the Supreme Court Rules referred to in this opinion, and is hereby cautioned to refrain from such conduct in the future; and

It is further ordered that he pay to the State Bar of Nevada the costs and fees incurred in connection with his hearing before the local administrative committee in the total amount of $3,774.90.