[L.A. No. 30180. In Bank. Apr. 16, 1974.]

AGNES M. MONTALTO, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Agnes M. Montalto, in pro. per., for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT.**—Petitioner seeks review of a recommendation of disbarment by the Disciplinary Board of the State Bar. Admitted to practice in 1962, she has no prior disciplinary record.

In October 1972, formal proceedings were instituted against petitioner as a result of her conduct in three cases arising in Los Angeles and Ventura Counties.

In the first case (McNeil) petitioner was retained by Mr. McNeil in January 1965 to handle a personal injury claim.[1] After approximately six months, petitioner negotiated a settlement with the defendant's insurer, who mailed petitioner a check in the amount of $1,250 payable to "Bruce K. McNeil and his attorney, Agnes M. Montalto." On receipt of the check, petitioner deposited it, endorsed with her signature and the purported signature of her client, in a trust account she maintained for her clients. She did not notify McNeil of the payment. The trust account, often overdrawn, was finally closed in July 1971.

After negotiating the settlement, petitioner met with McNeil and persuaded him to execute a release of his claim, advising him several months would elapse before he could expect payment. Thereafter McNeil's attempts to reach petitioner by phone or mail were unavailing, and he finally visited her office in the fall of 1970.

During this visit McNeil learned of the settlement and received petitioner's promise to send his portion of the award within a week. The promise was never performed. Petitioner admits her indebtedness to her client but as yet has failed to make restitution.

In the second matter (Doll) petitioner was retained by Mrs. Doll to obtain a dissolution of marriage. Mrs. Doll filled out the required petitions for dissolution and paid petitioner $200 to cover filing fees, costs, and legal services.

Anxious about the progress of her dissolution, Mrs. Doll phoned petitioner on several occasions and was informed Mr. Doll had been served with the petition and that petitioner was waiting for a court date. In actuality neither filing nor service had occurred.

Subsequently Mrs. Doll learned her husband had not been served, but she agreed to meet him pursuant to arrangements made by petitioner. At this meeting with the Dolls, petitioner induced Mr. Doll to sign a "non-harassment agreement" and a form in which he promised to appear in the action and to waive notice.

Following this encounter Mrs. Doll unsuccessfully sought to reach petitioner by telephone. After numerous phone calls extending over a period of several months, Mrs. Doll wrote to petitioner terminating their relationship and requesting return of the $200. Petitioner deposited the money in her personal account and has not complied with the request for refund.

---

[1] Petitioner was to receive one-third of any recovery.

In the third case under investigation (Olivia) petitioner received from Miss Olivia documents belonging to the latter's then recently deceased mother. Although the documents contained the mother's will, petitioner was never actually employed to probate it. After more than a year, Miss Olivia requested return of the documents and eventually engaged two attorneys who also attempted to retrieve them. Petitioner failed to respond to the requests and was finally ordered to show cause why the documents should not be produced. It was only after petitioner had failed to appear at the hearing to show cause and a bench warrant had been issued for her arrest that she delivered Miss Olivia's papers to the court.

The local administrative committee found petitioner in the McNeil case had forged her client's signature, converted proceeds of the settlement check, and failed to communicate with her client in violation of section 6106 of the Business and Professions Code. In Doll, petitioner was found to have committed an act of moral turpitude in converting her client's funds. And in Olivia, she was found to have willfully disobeyed a superior court order. Additionally, the committee concluded that in both McNeil and Doll petitioner had violated rule 9 of the Rules of Professional Conduct and had breached her oath as an attorney (see Bus. & Prof. Code, §§ 6103, 6067).

The committee recommended petitioner be suspended from the practice of law for two years with the last year stayed on the condition that restitution be made with interest to McNeil in the sum of $833.33 and to Mrs. Doll in the amount of $200.

On review, the findings of the disciplinary board were substantially the same as those of the local committee. However, the board, by a vote of eight to six,[2] recommended petitioner be disbarred and be required to comply with provisions of rule 955 of the California Rules of Court.

In seeking review of this recommendation, petitioner first contends she was denied an opportunity to be heard because the disciplinary board failed to grant her request for a second continuance. This contention is without merit. The record indicates the disciplinary board had granted an initial continuance from April 5, 1973, to May 5, 1973. On May 3, two days before the hearing, the board received a letter from petitioner requesting an additional continuance. This request, like the first, gave no reason for the need of a continuance, and the request was denied. In view

---

[2]Five of the dissenting members concluded petitioner should be suspended for two years and until she makes restitution, but for not more than five years. The sixth member advocated following the recommendation of the local committee.

of the fact the board had already granted one continuance and no showing was made as to the need for a second, it cannot be concluded the denial of the request was unjustified or that petitioner was deprived of the opportunity to be heard.

■ Petitioner also argues the finding of forgery in McNeil is not supported by the evidence. While it is true the handwriting expert testifying that McNeil's signature was a forgery did not state the spurious writing belonged to petitioner,[3] the circumstantial evidence is sufficient to support the finding. It is undisputed that the signature of McNeil is a "free-hand" forgery and that McNeil did not authorize anyone to sign the check for him. The settlement check was sent to petitioner, was signed by petitioner in her own name, and was deposited by petitioner in an account maintained by her for her clients. Petitioner admits she owes the money to McNeil, and no explanation has been offered as to how the check, which was exclusively in petitioner's control, might have been signed by someone else without her knowledge and with her belief that it was signed by McNeil.

Petitioner's complaints in the Olivia matter are totally without merit.

■ In the Doll matter petitioner urges error exists in the finding she at no time rendered services to Mrs. Doll. This contention is well founded. Petitioner did arrange a meeting between Mrs. Doll and her husband after which Mr. Doll refrained from interfering with the activities of his wife. While it is uncertain whether Mr. Doll's subsequent restraint was due to petitioner's efforts, all doubts are to be resolved in petitioner's favor. (*Ashe v. State Bar* (1969) 71 Cal.2d 123, 133 [77 Cal.Rptr. 233, 453 P.2d 737].) In view of such resolution, we conclude that although petitioner's conduct in the Doll matter was reprehensible, we cannot agree with the local committee and disciplinary board that no compensable services were rendered; but the issue of appropriate compensation should be litigated in a civil action rather than decided through State Bar proceedings.

Regardless of our conclusion on compensation, however, we find petitioner's conduct in the McNeil case inexcusable and her inattention to the Olivia and Doll matters unjustified. Giving due weight to the presence of mitigating circumstances,[4] and recognizing that each case must be decided on its own facts (*Yapp v. State Bar* (1965) 62 Cal.2d 809, 819 [44 Cal.

---

[3]This, claims petitioner, should have permitted a negative inference in her favor.
[4]Petitioner was experiencing difficult transitions in her personal and financial life.

Rptr. 593, 402 P.2d 361]), we conclude petitioner should be suspended from the practice of law and required to make restitution.

Therefore, it is ordered that petitioner be suspended for two years and until she makes restitution to Mr. McNeil in the sum of $833.33 with interest at the rate of 7 percent, accruing from June 1968. It is also ordered that petitioner comply with rule 955 of the California Rules of Court.

Suspension shall become effective 30 days from the filing of this order.