On accused's petition for rehearing filed February 22, petition for
rehearing denied by opinion March 24, 1977
See 277 Or 121

# In re Complaint as to the Conduct of
## GENE L. BROWN, *Accused.*
### (No. 1149, SC 24368)

561 P2d 1030

Donald F. Myrick, of Myrick, Coulter, Seagraves, Nealy & Myrick, Grants Pass, for the petition.

PER CURIAM.

## PER CURIAM.

The accused filed a petition for rehearing and modification of the opinion in this matter, 277 Or 121, 559 P2d 884 (1977). We held the accused guilty of unethical conduct and suspended him from the practice of law for a period of 30 days from the date of the mandate.

Generally, the opinion agreed with the findings of the Bar's Trial Board but concluded that the accumulated unethical acts of the accused warranted more than a public reprimand. Three of accused's contentions warrant further expression by this court.

■ The petition contends that the court erred "in using DR5-101(A), DR5-104(A), and DR1-102(A)(4) as standards for judging accused's conduct" because the acts complained of occurred prior to the adoption of those provisions of the Code of Professional Responsibility on December 30, 1970.

The accused's original brief on appeal discusses each of the above provisions of the Code and makes no contention that the Trial Board erred in relying on such provisions. Indeed, accused's brief acknowledges that "there were effectual Canons of ethics" prior to December 30, 1970, and that provision DR5-104 is related to the previous Canon 5 of the earlier Rules of Professional Conduct.

The present provisions of the Code of Professional Responsibility are based on the original Canons of the profession and previous Rules 4, 5, 6 and 7, which were adopted on December 17, 1935. The sources for the present rules are the Oregon statutes, decisions of this court, and opinions of the Committee on Legal Ethics. Perhaps we should not have referred to the present provisions of the Code, but the prior proceedings in this disciplinary matter alluded to them and the original brief made no contention of error in doing so. The present provisions are merely a more precise statement of the original Canons, Rules, and decisions

[ 733 ]

of this court. In addition, the two $5,000 loans from the corporation to the accused occurred on May 15, 1969, and February 27, 1970. This is contrary to the general intent expressed in opinion No. 158, approved December 16, 1967, and opinion No. 188, approved October 7, 1970, of the published opinions of the Committee on Legal Ethics.

We conclude that the admonitions expressed in the present provisions of the Code of Professional Responsibility do not materially differ from the earlier Canons, Rules and decisions of this court.

Petitioner also contends that the "Court erred in finding the accused guilty of the Bar's Sixth Cause of complaint." This cause of complaint concerned the impropriety of the accused's actions in accepting employment as counsel to the administrator of the Jacobson estate. The impropriety was based upon several alleged conflicts of interest which existed between the accused and the Jacobson estate.

The Bar alleged four distinct conflicts of interest. The accused contends that one of these conflicts, discussed in our opinion, did not exist; that is, the conflict over the bylaw purchase agreement between the accused and the deceased Jacobson.

Petitioner specifically contends that the opinion erred in stating, "The bylaws provided, in effect, that neither party would sell his stock and the surviving stockholder had a right to acquire the stock at 'book value.' "

The bylaws provided as follows:

"The shares of stock of this company shall not be transferred or made the subject of any other sale or disposition, or as a pledge or other security until first offered in writing to the company for purchase at the book value of the stock. If such offer is refused by the company, then the stock shall be offered to the stockholders, and if necessary, prorated among them or such of them as desire to purchase the same according to their invested interest at that time in the corporation.

"* * * * *.

"In no case shall any share be assignable, transferrable or subject to pledge or other encumbrance until an offer to the company is made and a refusal by it, and subsequent offer and refusal by the stockholders to purchase as aforesaid."

Petitioner argues that the bylaws did not require the sale of the stock owned by Carl Jacobson or his estate to the accused for "book value" upon the death of Jacobson. Petitioner is correct in stating that the bylaws did not require the sale of the Jacobson stock to the accused for "book value." The bylaw provision for stock purchase provided that it would be first offered to the corporation for purchase at the "book value" and if the corporation refused to purchase, then the stock should be offered to the stockholders. The accused was the only other stockholder. Assuming that the corporation, Jake Land Company, did not have the finances or did not desire to purchase the stock, then the accused, who then owned 50 percent of the shares, was the only logical person to purchase the Jacobson shares of stock from the estate.

Assuming that our general statement in the opinion was too broad, but further assuming, as stated in the opinion, that the accused did acquire the Jacobson shares of stock in the corporation after litigation and negotiation, we are still of the opinion that the bylaw agreement for sale of the stock did represent a conflict of interest between the accused and Jacobson, and subsequently the Jacobson estate. Jacobson should not have been requested to approve and agree to the same without his first being advised that it should be submitted to disinterested counsel. This provision in the bylaws, as prepared by the accused, created a potential conflict between the accused and his client, Jacobson.

The petition also points out that the opinion erroneously stated, "In the meantime, Jacobson received no income on his investment." As the opinion points out,

Jacobson was to recover the money he advanced plus interest thereon at 10 percent per annum.

Petitioner correctly states that the evidence shows that Jacobson did receive interest on his original investment of approximately $33,000 in the following amounts:

| | |
|---|---|
| 1965 | $3,500.00 |
| 1968 | 4,800.00 |
| 1970 | 1,472.00 |
| 1972 | 1,171.46 |

Under the agreement, he should have received in excess of $26,000.

With these corrections, we adhere to the original conclusions set forth in the opinion.

Petition for rehearing is denied.