IN THE MATTER OF SAMUEL B. FRANCOVICH, ATTORNEY AT LAW.

No. 8862

March 2, 1978 575 P.2d 931

---

*Garry E. Claiborne,* of Las Vegas, and *Peter A. Perry,* of Reno, for Petitioner.

*David R. Belding,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This matter is before us on petition to review recommendations of the Board of Governors of the State Bar of Nevada that Samuel B. Francovich be suspended from the practice of law subject to reinstatement upon meeting certain conditions.[1]

---

[1] The Board recommended:

"(1) That Samuel B. Francovich be suspended from the practice of law for six months subject to being reinstated after three months if, within thirty days from the date of suspension, Mr. Francovich has:

(a) repaid the $1,000 retainer to Mr. Frederick Maclaine; and

(b) files a petition for reinstatement with the Board of Governors pursuant to Supreme Court Rule 162;

"(2) That Samuel B. Francovich notify his clients as to his suspension pursuant to Supreme Court Rule 112A(1)(a); and

"(3) That Samuel B. Francovich be assessed all costs regarding the proceedings including court reporters' fees, costs of investigation and costs of the special examiner."

Francovich accepted a $1,000 retaining fee from Frederick Maclaine, brother of Dennis Maclaine, to represent Dennis on appeal from his conviction for the possession and sale of marijuana. Dennis then was confined in the Nevada State Prison. After timely filing a notice of appeal and designation of record, Francovich wrote Dennis notifying him that he had been retained by brother Frederick, enclosed a copy of the notice of appeal and designation of record, and advised him of the need for a transcript of testimony and its estimated cost. Brother Frederick also was told that there would be a transcription cost. Frederick indicated that further funds were not available. Francovich, therefore, filed a motion for a free transcript. That motion was denied. Neither Dennis nor Frederick were advised of the denial. Indeed, Francovich did not thereafter communicate with his client, nor repond to requests for a status report. The appeal was abandoned for lack of transcript. Francovich did not return the retaining fee until after the Local Administrative Committee had recommended discipline.

Francovich does not ask this court to excuse his neglect. He admits his errors in failing to communicate with his client, to respond to requests for a status report, to return all or part of the retaining fee when it became apparent that the appeal could not be perfected without a transcript. He does suggest, however, that the penalty of suspension is much too severe.

The failure to perform promised legal services, if a pervasive course of conduct by the attorney, may warrant the severe discipline of suspension or disbarment. Lester v. State Bar, 551 P.2d 841 (Cal. 1976); Selznick v. State Bar, 547 P.2d 1388 (Cal. 1976); Doyle v. State Bar, 544 P.2d 937 (Cal. 1976); In re Pearce, 540 P.2d 515 (Utah 1975); Montalto v. State Bar, 520 P.2d 721 (Cal. 1974); Alkow v. State Bar of California, 479 P.2d 638 (Cal. 1971); Grove v. State Bar of California, 427 P.2d 164 (Cal. 1967).

In the matter at hand we have a single instance of client neglect, wholly unlike the circumstances before the court in the cited cases where severe discipline was imposed. We are not willing to infer a pattern of misconduct when the record does not show it. Although the recommendation of the Board of Governors is persuasive, this court must exercise its independent judgment. State Bar v. Raffetto, 64 Nev. 390, 183 P.2d 621 (1947); In re Kellar, 88 Nev. 63, 493 P.2d 1039 (1972). We heretofore have modified recommended discipline when believed to be too severe. In re Cochrane, 92 Nev. 253, 549 P.2d 328

(1976); In re Kellar, supra. A majority of this court believes that the penalty recommended by the Board is not warranted, although discipline is in order. We publicly reprimand Samuel B. Francovich for his conduct in the Maclaine matter and direct him to pay the State Bar of Nevada all costs of this proceeding including court reporters' fees, costs of investigation and of the special examiner.

BATJER, C. J., and MOWBRAY, J., concur.

GUNDERSON, J., dissenting:

I respectfully dissent.

In the instant case, Mr. Francovich accepted a fee of $1,000 to prosecute an appeal for which he knew a transcript was required. When the district court denied his request for a free transcript, Mr. Francovich simply retained the defendant's money, without seeking mandamus relief in this court, as could have been done. *See* NRAP 21; Teeter v. District Court, 64 Nev. 256, 180 P.2d 590 (1947).

As a legal principle, I can accept that isolated instances of professional neglect should not be the subject of Bar disciplinary proceedings, but instead should be left for the courts' cognizance in civil malpractice actions in instances where damage results. However, I am not ready to characterize as mere "neglect" the practice of pocketing substantial amounts of money for services which a lawyer then makes no good faith effort to perform. *Cf.* Selznick v. State Bar, 547 P.2d 1388 (Cal. 1976); Doyle v. State Bar, 544 P.2d 937 (Cal. 1976). Review of the authorities indicates that other tribunals view such derelictions in terms of moral turpitude, dishonesty and corruption.

Moreover, I could not in any case countenance modifying Mr. Francovich's penalty on the ground that, as the majority say: "In the matter at hand we have a single case of neglect." I suggest the Board of Bar Governors knows Mr. Francovich has been in professional difficulties thoughout the years. For example, as I believe they all know, only a few years ago Mr. Francovich, who had proceeded "up though the chairs" of the Board of Bar Governors, had to forego the presidency of the State Bar of Nevada because problems over one of his professional indiscretions surfaced just prior to his expected election as president. The Board was constrained to reprimand Mr. Francovich publicly, both for commingling a client's funds with his own, and for improperly borrowing money from a client. *See,* Journal of the Nevada State Bar, 39 *Inter Alia* 32 (Jan. 1974).

This court has recently held: "The previous poor record and repeated misconduct of an attorney may be considered in determining' the severity of the penalty to be assessed in a disciplinary proceeding." In re Miller, 87 Nev. 65, 72, 482 P.2d 326, 330 (1971). For a pattern of misconduct nearly identical to what the records establish concerning Mr. Francovich, the California Supreme Court unanimously approved an actual suspension of one year, with a further probationary period extending to three years. *See Selznick,* cited above. Therefore, I suggest the majority's basis for modifying the Board's recommendation is contrary to the facts and to precedent.

In general, I question whether suspensions are a very useful method of professional discipline. After all, an attorney's failure to serve clients to whom he has committed himself will hardly be corrected by ordering that, for months, he is not to serve his clients at all. Therefore, where total disbarment does not yet appear appropriate, a suspension or temporary disbarment may do little to serve the public interest.

Even so, here it appears that although the Board of Governors had already subjected Mr. Francovich to the discipline of public censure, his lack of professional responsibility persisted. Thus, despite personal reservations about suspension as a sanction, I cannot disagree with the Board that suspension is the only remedy remaining, short of disbarment, which may be sufficient to impress Mr. Francovich that professional obligations must be honored.

The time comes when compassion for an attorney can only be counted as insensitivity to the public. The Board of Bar Governors' recommendation should be approved.

MANOUKIAN, J., dissenting:

I respectfully dissent and explicate my difficulty with the Court's opinion.

In the instant case, the Board of Bar Governors concluded: that as a result of his failure to prosecute an appeal to this Court on behalf of his client and thereby perform the services for which he was retained, petitioner has violated Rule 197 of this Court and Rule 203 adopting, *inter alia,* Canon 7 and Disciplinary Rule 7–101A(2) of the American Bar Association Code of Professional Responsibility and that the habitual disregard by petitioner for the interests of his client together with his willful failure to perform legal services for which he was retained constituted (1) a breach of the good faith and fiduciary duty owed by an attorney to his client, (2) unethical conduct, and warrants disciplinary action in the form of suspension from the practice of law. Supreme Court Rule 163.

Here, petitioner failed to file necessary appellate documents for his client, indirectly misled him through relatives who were interested in the outcome of the proceedings as to the status of his case, failed to timely return a retainer fee, and generally avoided all communication with his client. The failure to prosecute an appeal, when such desire is made known to counsel, can itself constitute a gross dereliction in duty. *Compare,* Downs v. Warden, 93 Nev. 475, 568 P.2d 575 (1977).

Although the instant failure to perform promised legal services may not constitute the "pervasive course of conduct by the attorney" that warranted the severe discipline imposed in Grove v. State Bar of California, 427 P.2d 164 (Cal. 1967), and its progeny, and while some of petitioner's omissions standing alone might be described as merely negligent, his persistence in refusing to perform sevices for which he was engaged and for which he accepted fees, and his representations to his client that petitioner was diligently working on the case can only be described as deliberate and willful.

Petitioner's behavior, indeed, constitutes serious misconduct. Failure to communicate with a client and inattention to his needs may alone constitute appropriate grounds for discipline. Spindell v. State Bar, 530 P.2d 168 (Cal. 1975); Taylor v. State Bar, 521 P.2d 470 (Cal. 1974). The same may be said of the acceptance of compensation for legal sevices which are never forthcoming. *Grove, supra;* Bruns v. State Bar of California, 117 P.2d 327 (Cal. 1941); *compare,* In re Kaufman, 93 Nev. 452, 567 P.2d 957 (1977).

There are no settled standards as to the fitting sanction, and each case must be decided on its own facts. Bradpiece v. State Bar of California, 518 P.2d 337 (Cal. 1974). We should, however, give great deference to the recommendations of the Board of Bar Governors. *See,* Silver v. State Bar, 528 P.2d 1157 (Cal. 1974).

Our primary concern must be the fulfillment of established professional standards, and in matters such as the instant case where culpability exists in the absence of mitigating circumstances, the recommended penalties should be adopted by this Court.

On this record, I would approve the Board of Bar Governors' recommendation.