FRED L. EIKELBERGER, and MARGARET A. EIKEL-
BERGER, Appellants, v. JOHN TOLOTTI, and
RICHARD W. HORTON, Respondents.

No. 10682

June 4, 1980                                    611 P.2d 1086

[Rehearing denied October 17, 1980]

GUNDERSON, J., dissented.

*Johnson, Belaustegui & Robison,* of Reno, for Appellants.

*Roger A. Bergmann,* of Reno, for Respondent Tolotti.

*Vargas, Bartlett & Dixon* and *John C. Renshaw,* of Reno, for Respondent Horton.

## OPINION

By the Court, THOMPSON, J.:

Fred and Margaret Eikelberger commenced this action to recover damages resulting from an alleged conspiracy between John Tolotti and his attorney, Richard W. Horton, to cause harm to the business interests of the Eikelbergers. A jury found for the Eikelbergers awarding compensatory damages of $75,000 and punitive damages of $50,000. Subsequently, the court granted the motion of Tolotti and Horton for judgment notwithstanding the jury verdict. By this appeal the Eikelbergers request this court to set aside the judgment n.o.v. and reinstate the jury verdict.

Litigation between the Eikelbergers and Tolotti, and others peripherally involved, has been carried on for years and may appropriately be characterized as oppressive. There have been fourteen separate district court actions, and nine appeals to this court, excluding the instant matter. Indeed, on one occasion we described the litigation as acrimonious. Eikelberger v. Lonergan Corp., 92 Nev. 284, 549 P.2d 748 (1976).

The case at hand differs from the others since it concerns the rather elusive concept of conspiracy as applied to a civil action for damages. In Carlton v. Manuel, 64 Nev. 570, 187 P.2d 558 (1947), we recognized the principle that what one may lawfully do, many may do in combination. That ruling would lead one to conclude that an alleged conspiracy is not actionable unless the combination results in the perpetration of an unlawful act, or some injurious act by unlawful means.

The principle acknowledged in *Carlton* appears to have been expanded by the more recent opinions of Short v. Hotel Riviera, Inc., 79 Nev. 94, 378 P.2d 979 (1963); and Hotel Riviera, Inc. v. Short, 80 Nev. 505, 396 P.2d 855 (1964). We there recognized that there may be a conspiracy to commit an act that would not be unlawful if done by an individual actor. The *Short* opinions approved two propositions. First, that an act lawful when done, may become wrongful when done by many acting in concert taking on the form of a conspiracy which may be prohibited if the result be hurtful to the individual against whom the concerted action is taken. Second, that when an act

done by an individual is not actionable because justified by his rights, such act becomes actionable when done in pursuance of a combination of persons actuated by malicious motives, and not having the same justification as the individual.

When the district court entered judgment n.o.v. it stated, among other things, that it is necessary for the act in furtherance of the conspiracy to constitute an actionable tort. That statement is in line with the principle acknowledged in *Carlton*. Indeed, the instruction to the jury embodied that concept.[1] The Eikelbergers did not object to the giving of that instruction, nor did they request an instruction encompassing the expanded concept of conspiratorial civil liability as declared in the *Short* cases. Consequently, on this appeal we must review the evidence regarding conspiracy with the *Carlton* doctrine in mind since that is the command of NRCP 51 and case law.[2] We acknowledge, of course, that in reviewing the propriety of a judgment n.o.v. we must read the record in a light most favorable to the jury verdict. Dudley v. Prima, 84 Nev. 549, 445 P.2d 31 (1968); Bliss v. DePrang, 81 Nev. 599, 407 P.2d 726 (1965).

1. The extensive litigation between the Eikelbergers and the Tolottis stems from a sublease agreement between them upon the Y-Rancho Trailer Park property in Sparks, Nevada, and an agreement authorizing the Eikelbergers to operate and manage the park.[3]

---

[1]A civil conspiracy is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. The conspiratorial agreement need not be in any particular form and need not extend to all the details or the conspiratorial scheme so long as its primary purpose is to cause injury to another.

The gist of a civil conspiracy is not the unlawful agreement but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

[2]NRCP 51: . . . No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection.

Cases: Gallues v. Harrah's Club, 87 Nev. 624, 491 P.2d 1276 (1971); Houlden v. Discount Motors, Inc., 85 Nev. 125, 451 P.2d 366 (1969); Fireman's Fund Ins. v. Shawcross, 84 Nev. 446, 442 P.2d 907 (1968); Wagon Wheel v. Mavrogan, 78 Nev. 126, 369 P.2d 688 (1962); Lathrop v. Smith, 71 Nev. 274, 288 P.2d 212 (1955).

[3]Eikelberger v. Tolotti, 90 Nev. 463, 530 P.2d 104 (1974), an accounting suit; Eikelberger v. Tolotti, 90 Nev. 465, 530 P.2d 105 (1974), distribution of condemnation award; Tolotti v. Eikelberger, 90 Nev. 466, 530 P.2d 106 (1974),

The present charge of civil conspiracy against Tolotti and Horton arises mainly from the manner in which they handled the claims of certain judgment creditors of the Eikelbergers. The Eikelbergers had purchased house trailers from Guerdon Industries, Inc., and Lonergan Corp. and had defaulted in payments due those corporations. As a consequence thereof, Guerdon Industries, in February 1967, obtained a judgment against the Eikelbergers for $22,640.11 plus accrued interest and costs. In April 1968, Lonergan Corp. secured a judgment against the Eikelbergers for $15,970.43, plus accrued interest, costs and attorneys' fees. Attorney Horton represented the creditors in prosecuting their claims to judgment. In October 1969, Tolotti retained Horton to represent him in his litigation with the Eikelbergers.

In February 1970, Horton, on behalf of Guerdon Industries and Lonergan, entered into a written agreement with Eikelberger regarding the Guerdon and Lonergan judgments. Pursuant thereto, Eikelberger paid a lump sum of $10,000, assigned funds from the operation of the laundry room, and assigned his rights to all reserve accounts at Security National Bank. Eikelberger also agreed to pay $500 per month until the judgments were paid.

The Guerdon judgment was assigned to the law firm of Stewart & Horton in November 1970.

In 1971, the Eikelbergers defaulted on seven of their monthly payments. This prompted Horton to schedule an execution sale. The sale did not occur since Eikelberger agreed to pay $4,000 in a lump sum and, by written stipulation with Horton, to reinstate the February 1970 agreement for monthly payments of $500.

In February 1972, the Lonergan judgment was assigned to Tolotti for a sum equal to 50 percent of the amount then due on the judgment.[4]

In June and July 1972, the Eikelbergers again defaulted on the monthly payments. Horton and Tolotti instituted execution proceedings, and a sale was scheduled for August 9, 1972. Once again, the sale did not take place since Eikelberger agreed to pay a lump sum of $3,000 and renew the monthly payments

second accounting suit and laundry expense suit; Eikelberger v. Rogers, 92 Nev. 282, 549 P.2d 748 (1976); suit by Eikelberger against Tolotti's accountant; Eikelberger v. Lonergan Corp., 92 Nev. 284, 549 P.2d 748 (1976); purchase by Tolotti of Lonergan judgment against Eikelberger; Eikelberger v. Tolotti, 94 Nev. 58, 574 P.2d 277 (1978), suit for back rent and damages.

[4]The contention of the Eikelbergers that Tolotti committed a wrong when he purchased the Lonergan judgment was found, by this court, to be without merit. Eikelberger v. Lonergan Corp., 92 Nev. 284, 549 P.2d 748 (1976).

of $500. Such monthly payments for September and October were accepted, and the Guerdon judgment satisfied.

On November 6, 1972, the Eikelbergers were instructed to tender no further monthly payments since Tolotti wished to preserve the size of his judgment for partial use in lieu of a bond on appeal in one of his lawsuits with the Eikelbergers. Notwithstanding such instruction, the Eikelbergers tendered monthly payments for November and December 1972 and the first four months of 1973. These payments were rejected. Meanwhile, in January 1973, the court ruled that the judgment purchased by Tolotti could not be used in lieu of a bond on appeal in another law suit with the Eikelbergers. Consequently, Horton and Tolotti again instituted execution proceedings. The Eikelbergers moved to stay the sale alleging complete compliance with the reinstated agreement for monthly payments of $500.

In opposing the motion to stay, Horton, by affidavit, alleged the nonpayment of the September and October 1972 installments. This statement was false. The court ordered a hearing on the merits of the motion without granting or denying the stay. Horton and Tolotti, nevertheless, proceeded with execution. The sale later was set aside upon the posting of a $10,000 bond by the Eikelbergers.

The Eikelbergers contend that Horton and Tolotti, or either of them, committed six separate unlawful acts in furtherance of their conspiracy to damage the business interest of the Eikelbergers. We turn to examine this contention with regard to each asserted unlawful act.

2.

(a) SCR 169 provides that a member of the state bar shall not represent conflicting interests, except with the consent of all parties concerned. The Eikelbergers contend that the simultaneous representation by Attorney Horton of Guerdon Industries, Lonergan Corp. and Tolotti violates the mentioned rule, and somehow caused the Eikelbergers damage.

It is clear from the record that Horton had the consent of Guerdon, Lonergan and Tolotti to simultaneous representation, and that each was fully informed. Those three are the "parties concerned" within the contemplation of the rule. None has complained. The Eikelbergers, who never have been represented by Horton, are not concerned parties. Their contention that SCR 169 was violated is without substance.

(b) SCR 183 prohibits a member of the state bar from purchasing or otherwise acquiring, directly or indirectly, any interest in the subject matter of the litigation which he is

conducting. The Eikelbergers assert that Horton, in purchasing the Guerdon judgment, violated this rule. The contention is specious. The litigation between Guerdon Industries and the Eikelbergers ended upon rendition of final judgment therein. The later purchase of that judgment by the firm of Stewart & Horton did not violate SCR 183. Indeed, an attorney may purchase his clients' property if he does so openly, fairly and honestly. McFail v. Braden, 166 N.E.2d 46 (Ill. 1960). The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client during litigation is the evil which SCR 183 seeks to avoid. Consequently, the rule appropriately has application to those dealings between an attorney and his client which would place the interests of the attorney in conflict with those of his client. McFail v. Braden, supra; In re Brown, 559 P.2d 884 (Ore. 1976), rehearing denied, 561 P.2d 1030 (Ore. 1977); Eschwig v. State Bar, 459 P.2d 904 (Cal. 1969); cf. In re Kellar, 88 Nev. 63, 493 P.2d 1039 (1972). The purchase of Guerdon's interest in the litigation after it had been reduced to final judgment would not create such conflict. In any event, the purchase of that judgment did not damage the Eikelbergers. They were obliged to pay that judgment regardless of the identity of the owner thereof.

(c) In an effort to justify a scheduled execution sale, Attorney Horton submitted an affidavit which was partially false. This is unethical conduct expressly forbidden by SCR 198(3)(7). Such conduct, however, does not create civil liability. It is uniformly held that the giving of false testimony is not civilly actionable. Radue v. Dill, 246 N.W.2d 507 (Wis. 1976); Platts, Inc. v. Platts, 438 P.2d 867 (Wash. 1968); Ginsburg v. Halpern, 118 A.2d 201 (Pa. 1955); Kantor v. Kessler, 40 A.2d 607 (N.J. 1945). A claim of conspiracy does not avoid the doctrine that there is no civil action for giving false evidence. Kantor v. Kessler, supra; Ginsburg v. Halpern, supra. This doctrine rests upon a policy to encourage witnesses to speak freely, and without fear of civil liability. It is important to the administration of justice that full disclosure by a witness be not hampered by a possible future damage suit. Consequently, perjury is an offense against the public only, and subject only to the criminal law. Thus, we are compelled to conclude that the Eikelbergers may not claim damages for the unethical conduct of Horton in submitting a partially false affidavit.

(d) It is contended that certain accountings prepared by Earl Rogers, a certified public accountant employed by the Tolottis, to be used in litigation between the Eikelbergers and the Tolottis were false and inaccurate, thereby breathing life into

the Eikelbergers' present claim for relief based upon conspiracy.

The Eikelbergers did not employ Rogers. Neither did they rely upon his accounting statements. Because of this, we already have ruled that there is no legal basis for damages claimed to have been incurred by the Eikelbergers. Eikelberger v. Rogers, 92 Nev. 282, 549 P.2d 748 (1976). To now contend that Horton and Tolotti conspired to have Rogers prepare such accountings does not aid the Eikelbergers since we already have ruled that they did not incur damage by reason of those accountings.

(e) In August 1972, Horton and Tolotti orally agreed with the Eikelbergers to reinstate the February 5, 1970, agreement, thus allowing the Eikelbergers to pay their judgment creditors at the rate of $500 per month. In spite of such oral agreement, Horton and Tolotti, commencing in November 1972, refused to accept monthly payments thereafter tendered by the Eikelbergers. [As of November 1972, the Guerdon judgment which had been assigned to the law firm of Stewart & Horton was fully satisfied—the Lonergan judgment, which Tolotti had purchased, had not been paid fully, the balance then remaining due being approximately $9,000.]

It is asserted that the refusal by Horton and Tolotti to accept monthly payments was done to create a false appearance that the Eikelbergers were in default, thereby permitting Tolotti to levy execution to satisfy the balance remaining due on the judgment purchased from Lonergan.

Although the record may be read inferentially to support such assertion, we do not perceive damage to the Eikelbergers. The execution sale did occur, but was later set aside upon motion of the Eikelbergers who were required to deposit $10,000 with the court pending a hearing to ascertain the amount remaining due on the judgment, and to determine whether the liquidation agreement should be reinstated.

The liquidation agreement was not reinstated. The court found that $8,936.84 remained due on the judgment and directed that sum paid to Tolotti from the cash deposit and the balance released to the Eikelbergers. That decision was appealed to this court and affirmed. Eikelberger v. Lonergan Corp., 92 Nev. 284, 549 P.2d 748 (1976). That opinion is dispositive of this contention.

(f) The last contention is that by proceeding with the execution sale (which later was set aside as hereinabove mentioned)

Horton and Tolotti abused legal process. The claim for relief for abuse of legal process was dismissed by the district court, and has not been challenged. Consequently, we shall not consider this contention.

Affirmed.

MOWBRAY, C. J., and MANOUKIAN and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

I respectfully dissent.

My brethren first decide that the lower court incorrectly instructed the jury, to the appellant's disadvantage. Despite this error, appellants prevailed. The district court entered a judgment n.o.v. On appeal, instead of determining whether the evidence sustains the jury's verdict, when correct legal principles are applied, my brethren have elected to review the record as though the district court's admittedly incorrect legal instructions were correct.

I am unclear just how NRCP 51, which requires an objection if an unsuccessful litigant is to complain of a jury verdict, may be applied to preclude a successful litigant from complaining that a judgment n.o.v. is unwarranted.