[S. F. No. 22010.   In Bank.   Sept. 8, 1965.]

AUGUSTUS EVANS NOLAND, Petitioner, v. THE STATE
BAR OF CALIFORNIA, Respondent.

Jerome R. Lewis for Petitioner.

F. LaMar Forshee for Respondent.

THE COURT.—This is a proceeding to review a decision of the Board of Governors of the State Bar of California that petitioner, Augustus Evans Noland, be publicly reproved. The decision arises from the allegation that petitioner counseled and aided in the unauthorized removal of the names of prospective jurors from the official jury list of the Justice Court of the Chico Judicial District, Butte County.

Petitioner was admitted to the practice of law in California in 1958 and soon afterward became a deputy district attorney in Los Angeles County, remaining in that office until February 1963 when he became the assistant district attorney for Butte County in charge of the Chico branch

office. In Chico petitioner performed the district attorney's usual administrative responsibilities and tried cases in the Chico Justice Court. A deputy district attorney assisted him in the trial work.

Shortly after petitioner arrived in Chico he began to maintain a jury log, which was a compiled record evaluating the performance of jurors in cases he had tried in the Chico Justice Court. He assertedly had become concerned about the "quality" of jury verdicts in Chico and indicated to associates that he thought some of the verdicts "were not very good." He discussed his theories with Judge Rothe of the justice court and suggested possible means of improving the situation, among the plans being the return of jurors for a second term to gain the benefit of their experience.[1] Mrs. Rice, the clerk of the court, overheard this conversation.

About noon on October 15, 1963, Mrs. Rice and petitioner were talking on the telephone about some routine matters when Mrs. Rice brought up the subject of having jurors serve more than once. She stated she was compiling a new list of jurors and, in accordance with the conversation she had overheard, had decided to include the names of jurors who had already served that year. She also mentioned she was in the process of "editing" the list.[2] At that point petitioner suggested that he would prefer to have the names of certain individuals omitted from the list. The evidence is conflicting as to whether petitioner or Mrs. Rice initiated this suggestion, although it is undisputed that petitioner did then read to Mrs. Rice a list of 65 names, which she copied, and that Mrs. Rice eventually did remove 52 of those names from the list she compiled.

The names petitioner read to Mrs. Rice were taken from his jury log, and included no jurors who had voted for a guilty verdict in any prior case. The list contained only jurors who had voted not guilty on cases or who had been challenged by the prosecution, and it particularly included all 12 jurors who had returned a not guilty verdict in *People v. Moreau,* a case petitioner had tried unsuccessfully and later characterized as a miscarriage of justice.

[1] The practice in the Chico Justice Court has been to compile a list of prospective jurors at the beginning of each year to fill the needs of the court for the one year. No juror on such list was ever called to serve more than once.

[2] The "editing" to which Mrs. Rice referred consisted of removing the names of people known to be unable to serve because of physical incapacity, change of residence, or similar reasons.

Although Mrs. Rice completed the compilation of a jury list which excluded 52 of the 65 names in accordance with the suggestion of petitioner, the list was never actually used. When he learned of the deletions, the chairman of the local administrative committee of the State Bar prevailed upon Mrs. Rice to abandon the project.

Section 6106 of the Business and Professions Code provides for appropriate discipline of an attorney for the commission of an act of moral turpitude, dishonesty, or corruption. If the evidence establishes that petitioner did commit an act involving moral turpitude, the findings of the Board of Governors should be sustained. ▋ In reviewing state bar proceedings there is a presumption that the evidence supports the findings below, and petitioner has the burden of establishing the contrary. (*McKinney* v. *State Bar* (1965) 62 Cal.2d 194, 195 [41 Cal.Rptr. 665, 397 P.2d 425]; *Di Gaeta* v. *State Bar* (1963) 59 Cal.2d 116, 117 [28 Cal.Rptr. 305, 378 P.2d 577].)

There is little dispute as to the crucial facts. Petitioner does not deny providing the clerk of the court with a list of pro-defense jurors taken from his jury log under circumstances in which he expected the names would be omitted from the final master jury list. Petitioner does contend, however, that the ultimate responsibility for the list was not his and, in the alternative, that his motives were laudable and that no harm was intended or accomplished. We shall see that the substance of these assertions evaporates under the light of close scrutiny.

▋ Petitioner contends it was Mrs. Rice, not he, who suggested deleting the names of certain jurors from the proposed list, but we fail to see how this absolves him of the charge of counseling, aiding, and participating in the removal of the names. Even if Mrs. Rice did assume the initiative, petitioner as a member of the bar was wholly unjustified in taking advantage of her eagerness or willingness to commit an unauthorized act. Since, as we unequivocally hold, the removal of the names in this fashion was improper, petitioner's duty as an attorney and experienced trial practitioner was to advise the clerk against her proposed project.

Petitioner further contends he had no idea what Mrs. Rice would do with the names he supplied her. Assuming the validity of this dubious assertion, the fact remains that petitioner, directly or indirectly, did in fact intend that Mrs. Rice delete the names. No other tenable reason has been advanced

for his spending a half-hour on the phone reading the lengthy list to her. Moreover, the evidence shows that Mrs. Rice did, in fact, remove all but a few of the names suggested by petitioner.

Petitioner also questions the official status of the list being compiled by Mrs. Rice at the time he talked to her. He contends Judge Rothe had never ordered a new list prepared as required by section 230 of the Code of Civil Procedure, and thus the Rice list was unofficial at best. Petitioner does not assert, however, that he knew of this fact when he read the list of names to Mrs. Rice. The conclusion is inescapable that he believed she was compiling the official list, inasmuch as it was her regular duty to do so. The evidence reveals that the relationship between the judge and the clerk was such that Mrs. Rice often performed essential court functions and obtained approval thereof after the fact. We therefore find no mitigation of petitioner's conduct and attach no significance to the subsequently ascertained fact that she was in the process of compiling a mere unofficial list.

Since petitioner's several defenses of a technical nature provide no excuse if the act he committed involved moral turpitude, the focal issue is whether counseling and advising the unauthorized removal of names from a master jury list is an act of moral turpitude, dishonesty, or corruption. Moral turpitude on the part of an attorney has been defined as conduct which is contrary to justice, honesty, and good morals. (*Arden* v. *State Bar* (1959) 52 Cal.2d 310, 321 [341 P.2d 6]; *Fall* v. *State Bar* (1944) 25 Cal.2d 149, 160 [153 P.2d 1].)

Under the foregoing definition we conclude that ex parte tampering with the selection of potential jurors in order to gain advantage at subsequent trials can be interpreted only as the calculated thwarting of objective justice. The basic guarantee of all persons to a trial by an impartial jury is contained in the Sixth Amendment: "the accused shall enjoy the right to . . . trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ." The fabric of this fundamental right is woven into a number of our statutes, such as section 1070 of the Penal Code which provides an equal number of peremptory challenges for defense and prosecution alike. This system of assuring, in the best manner possible, the selection of an impartial jury panel may not be thwarted by collusive action between court attachés and prosecuting attorneys.

■ Petitioner contends he was only trying to "improve the jury system," that his conduct was not devious, and that he intended no impropriety. A review of the record is not persuasive of the naivete or innocence of an attorney with five years' experience as a deputy district attorney who prosecuted some 150 jury cases. The facts abundantly demonstrate he was in effect surreptitiously exercising 65 unauthorized peremptory challenges.

■ We cannot condone petitioner's conduct as a method to "improve the jury system" by eliminating "pro-defense" jurors. Petitioner's program did not provide an equal opportunity for defense attorneys, and although he may have spoken candidly among colleagues of his conversation with Mrs. Rice, he failed to advise the local bar generally of what had been done. This suggests a dismaying lack of appreciation of the impartiality required in our traditional jury system. ■ Juries are not to be hand-picked by prosecutors so that they may merely ratify indictments and informations with verdicts of guilty. Although an attorney's good faith is a factor to consider in determining whether discipline should be imposed (*Call* v. *State Bar* (1955) 45 Cal.2d 104, 111 [287 P.2d 761]), petitioner's *ipse dixit* assertion of good faith here must be weighed in the context of the damage that could have been done to the jury system of Butte County.

■ The only remaining question is whether the recommended discipline is commensurate with the gravity of the act. The local administrative committee recommended, "notwithstanding the gravity of the offenses, because of the financial condition of respondent and the existence of numerous dependents," that petitioner be suspended from practice for 30 days. The Board of Governors reduced the penalty to public reprimand and gave no explanation for its action.

Regrettably we find from the contentions made in this court that petitioner still has achieved no insight into the grave significance of his actions. As an active prosecutor, he must be discouraged from attempting any further zealous abuses of judicial administration. We therefore restore the penalty recommended by the local administrative committee.

The findings of the Board of Governors are sustained. The petitioner is suspended from the practice of law for 30 days, effective 30 days after the filing of this opinion.