[S.F. No. 24357. Nov. 18, 1982.]

CLAUDE E. DIXON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Claude E. Dixon, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Marie M. Moffat for Respondent.

OPINION

**THE COURT.**\*—We review a recommendation of the State Bar Court that petitioner, Claude E. Dixon, be suspended for one year, with execution stayed, and that he be placed on probation for two years on conditions including three months' actual suspension, passage of the Professional Responsibility Examination, and compliance with various reporting requirements. That recommendation represented a modification by the State Bar Court's review department of the unanimous recommendation of disbarment made by that court's hearing panel. (See Rules Proc. of State Bar, rule 452.) Petitioner was informed that we were considering the imposition of more substantial discipline, and he thereupon filed a petition for review which we now consider.

Petitioner contends that (1) the findings of fact are not supported by substantial evidence, (2) the hearing panel erred in not granting petitioner a continuance in order to allow his attorney to be present at the hearing, (3) both the hearing panel and review department failed to consider the "spite" motivation of one complainant, (4) the bar examiner's misconduct before the hearing panel denied petitioner a fair trial, (5) the hearing panel did not properly rule on several issues of law, (6) he was denied an opportunity to prepare his defense, and (7) the hearing panel was "negligent" in not recognizing the falsity of one witness' testimony. We conclude that each of petitioner's contentions lacks merit and that his conduct warrants greater discipline than that ultimately recommended by the State Bar.

Petitioner was admitted to the practice of law in January 1964 and has no prior discipline. On May 5, 1981, formal proceedings were instituted against him by a notice to show cause charging him with 12 counts of misconduct. After the hearing, the bar court dismissed six counts. In the remaining six counts, the court found multiple violations of statutory and rule provisions including (1) rule 5-101 of the Rules of Professional Conduct, which requires that any business relationships with clients be on terms that are fair and reasonable, with the client's written consent and with the client being informed of a right to independent counsel, (2) rule 6-101 (knowingly performing legal services without the requisite skill), (3) Business and Professions Code section 6068, subdivision (d) (misleading a court by preparing and filing false declarations of himself and his client), (4) section 6128 (deceit or collusion with intent to mislead the court and opposing counsel), (5) section 6106 (commission of an act of dishonesty), (6) section 6068, subdivision (e) (failure to preserve the inviolate nature of confidential client communications), (7) section 6068, subdivi-

---

\*Before Broussard, Acting C. J., Mosk, J., Richardson, J., Kaus, J., Reynoso, J., Grodin, J.,† and Racanelli, J.†

†Assigned by the Acting Chairperson of the Judicial Council.

sion (f), (unnecessarily advancing a fact prejudicial to the honor or reputation of a party or witness), and (8) section 6103 (wilful disobedience or violation of a court order). These several violations arose in five separate matters involving three different clients, which we now describe. (The disparity between the number of violations found (10) and the number of counts remaining in the order to show cause after six were dismissed (6) apparently reflects the fact that the same conduct of petitioner was found to have violated more than one statute or rule.)

### 1. THE "A" MATTER

In November 1976, petitioner was retained as attorney by A. In 1978, petitioner and his wife borrowed $10,000 from A, the debt being evidenced by a promissory note. At that time although A was aware of petitioner's financial condition and was given a reasonable opportunity to seek the advice of independent counsel, A was not advised of his right to such outside counsel. Although the transaction was fair and reasonable as to A, he did not give his written consent.

The State Bar Court found that petitioner had committed a technical violation of rule 5-101 by acquiring an interest adverse to his client without obtaining the client's consent in writing.

### 2. THE "B" MATTER

In 1977 petitioner was retained by Mrs. B and shortly thereafter while still representing her, petitioner offered to buy the equity of Mr. and Mrs. B in a residence being purchased by them. Petitioner and his wife executed and delivered to the Bs two promissory notes in the aggregate sum of $13,000 without disclosing petitioner's uncertain financial condition to Mrs. B, who was unaware of that condition, or informing her of her right to seek the advice of independent counsel. The State Bar Court found petitioner had violated rule 5-101 in acquiring an interest adverse to his client, Mrs. B.

### 3. THE "C" MATTER

A. *Purchase of Residence*—In September 1977, petitioner was retained by C to collect a promissory note held by her which was then in default. Two months later, while still representing both Mrs. B and C, petitioner negotiated an agreement whereby he and his wife were substituted for the Bs as the purchasers of C's home, thereby releasing the Bs from any further obligation to C.

The State Bar Court found that C, a woman unlearned in real estate matters, reposed great trust and confidence in petitioner as her attorney. Apparently she

thought she would receive a deed of trust as security when selling her home to petitioner; the document she actually signed was a land sale contract. Petitioner did not disclose his financial condition to C and did not inform her of her right to seek independent counsel; nor did C have a reasonable opportunity to seek such outside counsel. It was specifically found that the terms of the contract were not explained to her in such a way as to allow her reasonably to understand them and that, as to her, the transaction was *not* fair and reasonable. Based on these findings, the State Bar Court found that petitioner had violated rule 5-101.

The State Bar Court also found that petitioner knew that in drafting the instrument in question he lacked the learning and skill ordinarily possessed by lawyers in good standing who perform, but do not specialize in, similar services practicing in the same locality under similar circumstances. By reason of petitioner's lack of skill, C was caused unnecessary expense in pursuing her legal remedies against petitioner following his failure to perform his obligations under the contract. Thus, the State Bar Court found petitioner had failed to act competently, a violation of rule 6-101.

Contrary to the agreement, petitioner failed to pay the property taxes then due on the house for the taxable year 1977-1978, or any property taxes at all until 1980.

Further, petitioner has not offered to rescind the contract and has, in fact, rejected an offer of rescission made by C's current counsel. He continued, at the time of the bar court's decision, to require that C pursue her legal remedies occasioned by his failure to perform his obligations under rules 5-101 and 6-101.

B. *False Declarations to the Court; Attorney Substitution.* While representing C in the note collection proceeding, petitioner filed his "declaration in support of request to set aside [an] order" vacating the default. In the declaration petitioner stated that "I know something of the financial condition of [C] at the present time from talking with her and her accountant and from personal observations. I know that this judgment is the major source and only substantial asset that she is relying on to support herself and her mentally retarded daughter. I further know that she has an outstanding obligation in the amount of $25,000 to pay by April 15, 1978." In addition, petitioner prepared and filed a declaration of C in which she stated that she was presently living on borrowed funds and that the judgment was the substantial part of her assets at the time. The facts known by petitioner at the time of his preparation of the declarations were that the judgment was not C's major asset, nor was she relying on it to support herself and her daughter, nor was she living on borrowed funds, nor did she have any obligation due on April 15, 1978.

The bar court found that both declarations involved dishonesty in the intentional filing of false documents with the court, that such filing was misleading to the court and opposing party, and intentionally so. Based on these findings, the bar court found that petitioner violated sections 6068, subdivision (d), 6106, and 6128 of the Business and Professions Code.

After pursuing the note collection for some time, C discharged petitioner and substituted Robert Eli as her attorney. Petitioner thereupon pursued a course of deliberate noncooperation. He refused to sign the form of substitution of attorneys and also failed to inform Eli that he would not oppose the motion for substitution, thereby causing C to incur unnecessary expense in connection with preparation for hearing on the motion. Furthermore, petitioner refused to turn over the files pertaining to the litigation, despite repeated requests to do so. As a result, C was forced to secure a court order on March 21, 1979, compelling their delivery. Petitioner ignored the court order and did not deliver the files until May 25, 1979, after C and Eli were forced to make three separate court appearances and to file contempt of court proceedings against him. C incurred an additional $900 in attorney's fees in order to secure her rightful possession of the files. The bar court found that petitioner purposely delayed the return of the files in order to discourage his client from retaining new counsel of her choice.

Based on these findings the bar court found that defendant had violated Business and Professions Code section 6103, wilful disobedience of a court order.

C. *Confidential Client Communication.* After C had discharged petitioner as her attorney, she filed suit seeking to enjoin him from harassing her. In a response filed by petitioner, he added the following gratuitous declaration: "[C] constantly worried about everything, including an affair that her husband supposedly had with [C's] sister eight years ago." This declaration was irrelevant to any issues then pending before the court and was found by the bar court to have been made for the purpose of harassing and embarrassing both C and C's sister and with the knowledge that the disclosure would cause public embarrassment to both.

Petitioner had obtained the information as a "direct and proximate result" of the attorney-client relationship that had existed between petitioner and C, who intended that the information be kept secret and confidential. Such information was prejudicial to the honor and reputation of C and her sister.

Based on these findings, petitioner was found to have violated sections 6068, subdivisions (e) and (f), of the Business and Professions Code.

## DISCUSSION

Petitioner argues that the findings of the State Bar Court were unsupported by the evidence and that the proceedings against him were defective. He acknowledges, however, that "petitioner has the burden of showing that the findings of the board are unsupported by substantial evidence" (*Caldwell* v. *State Bar* (1975) 13 Cal.3d 488, 495 [119 Cal.Rptr. 217, 531 P.2d 785]), and that "In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty." (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993].) Petitioner has not carried his burden.

Taking issue with a number of the findings of the bar court, petitioner challenges its interpretation of testimony and the characterizations accorded various transactions. Upon our review of the record, we find that these findings were amply supported. ■ We have said that " 'When the findings . . . rest primarily on testimonial evidence, we are reluctant to reverse the decision of the local administrative committee, which was in a better position to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony. [Citations.]' " (*Himmel, supra,* at p. 794.)

■ Petitioner's second contention is that the hearing panel erred in not granting him a continuance in order to allow his attorney to be present. His claim is meritless. The record shows that petitioner first indicated his desire to be represented by counsel on the morning of the scheduled hearing, nine months after the preliminary hearing, four months after the issuance of the notice to show cause, and four weeks after his request for a continuance had been denied. It is also clear from the record that petitioner did not contact the attorney who agreed to represent him until the weekend before the hearing. When he found the attorney would not be available to attend the hearing, petitioner did not attempt to arrange any other representation.

It was, of course, petitioner's responsibility to retain counsel if he desired representation at the hearing (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 446 [113 Cal.Rptr. 602, 521 P.2d 858]), and he had ample opportunity to do so considering the substantial period of time during which he was informed of the charges against him.

■ There is also no substance to petitioner's claim that he was not given an opportunity to prepare his defense, and that he was precluded from presenting witnesses on his behalf. The hearing panel has discretion to exercise reasonable control in order to avoid an unnecessarily long hearing. It questioned the wisdom of petitioner's desire to call several witnesses to testify regarding his "truthfulness and credibility." The petitioner did not pursue this matter, calling

no witnesses on his behalf except his wife. Petitioner was not precluded from calling any witnesses of his choice.

■ He also contends that he was not notified that this was a "disbarment case" and that he should have been so advised prior to the hearing. However, petitioner had been fully advised of *all* the charges against him, four months before the hearing. The fact that he was not told that the State Bar would request disbarment does not constitute lack of notice as required under Business and Professions Code section 6085.

■ Petitioner asserts, without foundation, a claim that the bar court ignored the "spite" motivation of complainant C. While the record does disclose that C was "mad" at petitioner, her anger was well founded. Further, while "we scrutinize with care any evidence bearing 'the earmarks of private spite' [citation], it is nevertheless settled that 'Whatever may have been the instigating factor, or whatever may have been the personal motive, . . . are not matters of controlling concern in a case where the facts disclosed independently lead to the conclusion that the attorney is subject to some disciplinary action.'" (*Sodikoff v. State Bar* (1975) 14 Cal.3d 422, 431 [121 Cal.Rptr. 467, 535 P.2d 311].) This is the situation in the instant case. C's major complaints are supported by documentary evidence as well as her own testimony. The objective details contained in these documents contain much of the evidence relied upon by the bar court. The testimony of the complainant was used merely in a supplemental manner. Even if C's complaints were primarily motivated by "spite"—and such motivation is *not* apparent from the record—there was substantial objective evidence on which to base the bar court's findings.

■ Petitioner further insists that he was denied a fair hearing because of misconduct by the State Bar examiner consisting of "vicious innuendos completely unsupported by fact." While some of the comments made by the examiner during argument were uncomplimentary to petitioner, petitioner does not demonstrate either that they were unwarranted by the evidence or improperly prejudiced the bar court against him.

He additionally claims that he was denied a fair hearing as a result of testimony presented during his absence from the hearing room. It is abundantly clear, however, that petitioner left the hearing room *voluntarily* and with *full knowledge* that the proceedings would continue without him. The bar examiner bore no responsibility to inform petitioner of what transpired in petitioner's absence. (Bus. & Prof. Code, § 6111; see Rules Proc. of State Bar, rule 555; *Yokozeki v. State Bar, supra* 11 Cal.3d at p. 447.)

Finally, it is petitioner's contention that the hearing panel was "negligent" in not recognizing that testimony given by a witness was false. However, whether

the testimony in question was, in fact, false and whether or not the hearing panel believed that testimony is not apparent from our examination of the record. We have no reason to believe the panel's decision is based on any false statements or findings.

In summary, upon our independent review of the record, we conclude that the findings of the bar court are fully substantiated by the evidence, that there has been no violation of due process, and that each of petitioner's arguments lacks merit.

### DISCIPLINE

Viewed in the light of the review department's findings, we conclude that there was rather technical misconduct involved in the A matter, slightly more serious misconduct involved in the B matter, and substantial serious misconduct with regard to the C matter. ■ The State Bar Court's recommendation of a one-year suspension stayed, upon condition of three months' actual suspension, is inadequate.

■ "Although prior cases serve as a guide, the extent of discipline does not derive from a 'fixed formula,' but rather is determined from a 'balanced consideration of the relevant factors.' [Citation.]" (*Silver* v. *State Bar* (1974) 13 Cal.3d 134, 146 [117 Cal.Rptr. 821, 528 P.2d 1157].) While we accord great consideration to the disciplinary recommendation of the review department, more severe discipline is imposed when it is warranted. (See, e.g., *ibid.*; *Fielding* v. *State Bar* (1973) 9 Cal.3d 446, 452 [107 Cal.Rptr. 561, 509 P.2d 193]; *Glickman* v. *State Bar* (1973) 9 Cal.3d 179, 184 [107 Cal.Rptr. 65, 507 P.2d 593].) ■ In the instant case, petitioner's infractions include ten separate violations of six rules or statutes, involving three clients.

In *Silver, supra,* (13 Cal.3d at p. 147), we imposed an *additional* one-year suspension (stayed) for misconduct against a single client involving, among other things, the acquisition of an interest adverse to a client, in violation of rule 4 (now rule 5-101). Petitioner here violated rule 5-101 in *three* separate transactions with his clients. He also was found to have violated rule 6-101 by knowingly performing legal services without the requisite skill.

Petitioner's most serious misdeeds, however, involved violations of sections 6068, subdivisions (d), (e) and (f), 6103, and 6128 of the Business and Professions Code. His deliberate violation of duties set forth in section 6068 is particularly disturbing because it involves moral turpitude. (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 198, pp. 205-206.) We have previously defined moral turpitude as conduct "contrary to honesty and good morals" (*Stanford* v. *The State Bar of California* (1940) 15 Cal.2d 721, 728 [104 P.2d 635]),

and " 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Citations.]" (*In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465].) In this case, petitioner knowingly filed false statements with the court, seeking to deceive the judge with regard to client C's financial condition; he violated confidential client communications and thereby advanced facts prejudicial to the honor and reputation of his client's sister. In addition, he wilfully and deliberately disobeyed a court order to deliver files to his client in an effort to prevent his client from obtaining counsel of her choice.

We have repeatedly observed that the main purpose of bar disciplinary proceedings is not to punish practitioners but to protect the public, the courts, and the profession from incompetent and unprofessional lawyers. (*In re Fahey, supra,* 8 Cal.3d at p. 849.) Petitioner manipulated the court system in furtherance of a personal dispute with his client, an elderly widow. He betrayed the trust of both clients and the courts. Petitioner before us knowingly filed with the court two false declarations for the purpose of misleading a judge; he committed various acts of dishonesty; he wilfully disobeyed a court order; he made public a sensitive and confidential allegation that he knew would be embarrassing to the honor of his client and her sister for his own personal benefit and, in so doing, violated the sanctity of the confidential relationship existing between attorney and client. Such misconduct by a member of the legal profession, which must maintain the highest standards of public confidence and trust, demands substantial discipline. Indeed, an attorney who wilfully and repeatedly ignores his responsibilities to the court and to his clients should not be permitted to continue to hold himself out as a member of the bar. (*Demain* v. *State Bar* (1970) 3 Cal.3d 381, 387 [90 Cal.Rptr. 420, 475 P.2d 652]; *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 683-684 [58 Cal.Rptr. 564, 427 P.2d 164].)

In *Alkow* v. *State Bar* (1971) 3 Cal.3d 924 [92 Cal.Rptr. 278, 479 P.2d 638], we disbarred an attorney who was found guilty of five counts involving violations of sections 6103, 6106 and 6068 of the Business and Professions Code. We stressed that "[a]n attorney owes the highest duty of fidelity to his clients" (p. 935), and held that Alkow's violations, which included failure to perform legal services for which he had been paid, mandated disbarment. In *Eschwig* v. *State Bar* (1969) 1 Cal.3d 8 [81 Cal.Rptr. 352, 459 P.2d 904, 35 A.L.R.3d 662], we held that disbarment was the appropriate discipline in a case where an attorney acquired valuable property from an aged client who relied heavily on him. He also misled the probate court in order to prevent its scrutiny of the transaction involving an asset belonging to an estate he was representing.

When added to his violations of the Rules of Professional Conduct involving acquisition of interests adverse to his clients resulting in pecuniary benefit to

him, practicing without the requisite skill with resultant financial loss to his client, and his wilful obstruction of his client's efforts to assert her remedies petitioner's numerous statutory violations require that we impose additional discipline. In the aggregate his offenses were substantial. He apparently to this day does not fully appreciate the seriousness of his misdeeds.

It is arguable that disbarment would be fully appropriate here. In deference to the conclusion of the State Bar Court, however, we adopt the following discipline which lies between the disbarment urged by the hearing panel and the suspension recommended by the review department which we believe to be inadequate:

It is ordered that Claude E. Dixon be suspended from the practice of law in this state for a period of five years, that execution of such suspension be stayed and that petitioner be placed on probation for a period of five years on the following conditions: (1) actual suspension for a period of two years and until petitioner takes and passes the Professional Responsibility Examination administered by the National Conference of Bar Examiners; and (2) compliance by petitioner with conditions of probation numbered 2, 3 and 4 contained in the recommendation of discipline of the State Bar Court dated March 16, 1981. It is further ordered that petitioner comply with subdivision (a) of rule 955 of the California Rules of Court within 30 days of the effective date of this order and with subdivision (c) of that rule within 40 days of such effective date. This order shall be effective 30 days after the filing of this opinion.